ANNIE B. FRISBIE, Respondent, *v.* ROBERT LEE LUCAS and JOHN E. HARRIS, as Executors, etc., of JOHN W. HUNT, Deceased, Defendants.

JOHN E. HARRIS, as Executor, etc., Appellant.

First Department, July 2, 1920.

Executors and administrators — action for services rendered to testator during his lifetime — evidence not establishing right to recover — corroboration of relatives of claimant — failure to call disinterested witness — limitation of actions — running of statute not stopped by oral promise to pay.

In an action against executors to recover for the alleged services rendered by the plaintiff to the testator during his lifetime based upon an alleged promise to pay and on the reasonable value of the services rendered and upon an alleged account stated, it appeared, among other things, that the plaintiff and her husband had at various times lived with the testator, free of all expense, and that the plaintiff had taken charge of his household affairs. The only evidence of any promise to pay for said services was the testimony of the plaintiff's husband, and merely went to show a promise to pay at some future time for services rendered nine years prior to the alleged promise. No claim against the estate was filed by the plaintiff until the time to do so had expired.

*Held,* that the evidence is insufficient to establish a claim against the estate with that certainty required by the law, and that the complaint should be dismissed.

The evidence to establish such claim should be clear and convincing and the testimony of relatives of the claimant must be corroborated by disinterested witnesses, and the fact that the claimant fails to call an available disinterested witness may be taken into consideration.

Even if the plaintiff is entitled to compensation for services rendered, her right of action therefor accrued when she left her employment in 1900, and her claim is barred by the Statute of Limitations. An oral promise to pay made in 1909 is not sufficient to take the case out of the operation of the statute, for such acknowledgment or promise must be in writing and signed by the person to be charged.

APPEAL by the defendant, John E. Harris, as executor, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 14th day of March, 1919, upon the report of an official referee.

*John Nicolson*, for the appellant.

*Frank Parker Ufford*, for the respondent.

PAGE, J.:

The action was brought against the executors of the estate of John W. Hunt, deceased, to recover the sum of $10,700 on alleged expressed contracts for compensation for services rendered to John W. Hunt in his lifetime by the plaintiff. The complaint alleges four causes of action. The first, that in 1909 John W. Hunt promised and agreed to pay the plaintiff the sum of $10,000 in consideration of services theretofore rendered by her to him. The second, for work, labor and services performed by plaintiff for Mr. Hunt between April 1 and October 1, 1910, of the reasonable value and for which Mr. Hunt agreed to pay $600. The third to recover the sum of $100 money paid out and expended by the plaintiff between April 1 and October 1, 1910, for and at the request of Mr. Hunt and which he promised and agreed to repay. The fourth, that about January, 1909, an account was stated between the plaintiff and Mr. Hunt and that thereupon the sum of $10,000 was found due to the plaintiff for services rendered to him by plaintiff, and that he had promised and agreed to pay the plaintiff said sum.

John W. Hunt and Dr. and Mrs. Frisbie had been socially intimate for some years. Mr. Hunt was a man of wealth who had been divorced from his wife and maintained a large and expensive house in Washington, D. C. Dr. Frisbie was an examiner in the Pension Office, receiving a salary of thirty-five dollars or forty dollars per month. Hunt's housekeeper left,

and he asked Dr. and Mrs. Frisbie to give up the lease of their house and come and live with him. They consented and moved to his house. Mrs. Frisbie occupied therein the position of the lady of the house, rather than that of a hired servant, presiding at the table and entering into the social life of the home. Dr. Frisbie testified that Mr. Hunt invited him to come and live at the house as his guest. Mr. Hunt had several servants and supplied the table and paid all the expenses of the establishment. The Frisbies were freed from the payment of rent and the expenses of maintaining their home. Dr. Frisbie testified that Mr. Hunt had said to Mrs. Frisbie that he wanted her to take charge of the house, he would make it as easy for her as possible, she had servants and everything there, everything would be comfortable, she could have her own way, and it would be doing him a service, and he would see that she was amply paid for it. Mr. Hunt occupied the Washington house for three or four months and then removed to Plainfield, N. J., where he maintained a home with Mrs. Frisbie in charge for one year. During this period, Dr. Frisbie testified, Mr. Hunt talked of building a house for himself and an adjoining house for the Frisbies to cost at least $10,000; that he also talked of building a number of apartment houses and either one of the houses or an apartment in one of them was to be for the Frisbies, and Mrs. Frisbie was to manage them. Nothing other than this was mentioned by either of the parties as to compensation to Mrs. Frisbie. In the summer of 1900 the furniture of the Plainfield house was packed and stored in Plainfield. Mrs. Frisbie returned to Washington, and the Frisbies re-established their own home. In November, 1900, Mr. Hunt was married, and shortly thereafter Mrs. Frisbie supervised the receipt of the furniture from Plainfield and the making of a house which Mr. Hunt had rented in Washington ready for occupancy. Mr. and Mrs. Hunt returned to Washington and continued to reside there until 1909, although they were traveling a goodly portion of the time. During their absence Mrs. Frisbie had the keys of the house, and general supervision of it as a vacant house. In 1909 Mr. and Mrs. Hunt went to Europe and in January, 1909, before sailing invited the Frisbies to take dinner with them at the Shoreham Hotel, at which they were stopping. At this dinner the

agreement on which the first cause of action is based was alleged to have been made. Dr. Frisbie alone testified to the "agreement." His testimony was that Mr. Hunt said: "They were going abroad, and when he returned they were going to settle down somewhere, and he proposed then to make a definite and final settlement with Mrs. Frisbie for the services she had rendered before. * * * When he came back he was going to make a definite settlement of what had been left at loose ends all these many years. * * * But when he located, and wherever it might be, he was going to make a final settlement with Mrs. Frisbie as he had before promised, and was going to allow her a sum of not less than $10,000." Dr. Frisbie said that Mrs. Frisbie said nothing in reply to this statement of Mr. Hunt.

Mr. Hunt returned from abroad in June, 1909, and instituted an action for divorce, in which a decree was entered in his favor. He resided in the Hotel Woodward in New York city and Mrs. Frisbie's son, Henry B. Caldwell, was with him almost constantly in the most confidential relations for about two weeks. He testified that Mr. Hunt stated to him that he was going to give his mother $10,000 that he had promised her previously; that he mentioned that he had promised this to her on several occasions, and that he was now going to make good on this promise and he wanted Mrs. Frisbie to come back and look after him; that he had $90,000 lying idle in the bank and he wanted to utilize that money to make good his promise to Mrs. Frisbie and others. Six months later, Caldwell testified Mr. Hunt said that he was considering establishing an annuity for the Frisbies, the income of which would be equal to Dr. Frisbie's salary from his position, the amount he did not remember, it was something in the neighborhood of $50,000. In the summer of 1910 Mrs. Frisbie desired to go to the seashore and selected a house which she persuaded Mr. Hunt to rent, and she again became the lady of the house, at Asbury Park, her husband and son spending much time with them, all at Mr. Hunt's expense. Mr. Hunt was ill most of the time, and while there prepared and executed his will. Dr. Frisbie was one of the witnesses to the will.

The second and third causes of action are to recover for the value of Mrs. Frisbie's services in acting as housekeeper at

Asbury Park, which she testified were reasonably worth $600, and for four weeks' board at a hotel in Asbury Park and $30 expenses for carriage hire, in looking for a suitable cottage. There is no evidence of any promise by Mr. Hunt to pay either for the services or the expenses. Nor did the plaintiff prove that she undertook this labor at the instance and request of Mr. Hunt. It does appear quite clearly that Hunt was persuaded to hire and maintain the cottage by the plaintiff to secure for herself and family a summer vacation at the seaside at Mr. Hunt's expense. These two causes of action should have been dismissed. The fourth cause of action was dismissed by the referee.

The alleged agreement on which the first cause of action is based was not an arrangement made in advance of the rendition of the services, but was a promise to pay at some indefinite future time for services rendered nine years prior to the alleged promise. Although Dr. Frisbie testified that before Mrs. Frisbie entered upon the performance of the contract, Mr. Hunt made a statement that Mrs. Frisbie would be amply compensated, and that he never asked any one to work for him without paying them, and that Mr. Hunt was a man of large means and the Frisbies were living on a small salary, no request or demand for payment, nor even a suggestion that there was an obligation to pay, was made during Hunt's lifetime. Hunt died December 11, 1910, in Dallas, Tex. His will was admitted to probate and letters testamentary were issued by the Supreme Court, New York county, on March 30, 1913. The executors advertised for claims, and the time to file claims against the estate expired in December, 1913, and it was not until February, 1914, that the claim was filed and then only the claim for $10,000. On July 29, 1913, Mrs. Frisbie wrote to Mr. Harris, one of the executors, as follows (the italics are mine):

" I am informed that Mr. Hunt's estate is nearing settlement and have been wondering what I should do in regard to my interest.

" I think you may know that it was *Mr. Hunt's intention to make a provision for us in his will* but I am told that his last will does not mention our names, although Mr. Hunt made a number of promises which it seems he failed to keep.

First Department, July, 1920. [Vol. 192.

" From two years before his last marriage, as well as more or less during his married life, in various ways, I rendered him considerable services without compensation. This continued during his last domestic troubles and until he went south a few weeks before his death. He always talked about paying us and providing a home for us for what we had done for him. Perhaps you have heard him speak of us in this connection, about *his intentions in regard to compensating me and remembering me in his will.* I would be glad to know what you may have heard him say on this subject.

"As you are an old friend and his executor, and probably know the truth of what I am trying to state, I should be glad to have you advise me what I had better do in regard to my claim."

This letter tends strongly to disprove the plaintiff's case. If a definite agreement had been made four years before this letter was written to pay Mrs. Frisbie $10,000, why is no mention made of it in this letter? The natural thing to do under such circumstance would be to make a demand for payment of the debt, and not to be seeking evidence of some agreement to make a provision by will. That there was a disappointed expectation of a gratuity by will is further shown by the change of attitude of Mrs. Frisbie and her son toward Mr. Hunt after the will was executed. We find them becoming partisans of his divorced wife, and supplying affidavits for the wife to use upon a motion to set aside the judgment against her and for a new trial, not for the purpose of proving her innocence, but to show Mr. Hunt's guilt of a similar offense, and thus securing to her marital rights in his property. The proof of the alleged agreement rests upon the uncorroborated testimony of Dr. Frisbie, whose interest in the event was not direct and pecuniary so as to disqualify him from testifying under section 829 of the Code of Civil Procedure, yet it was such that he could not be termed a disinterested witness. He was a man of approximately eighty years of age, he was testifying to a transaction six years after the event. He stated several times that his recollection had been refreshed by conversations with Mrs. Frisbie and Mrs. Hunt. Mrs. Hunt, who was present at the alleged conversation of January, 1909, was not called by the plaintiff, although plaintiff's attorney in this

action was Mrs. Hunt's attorney in the divorce action and stated upon this trial that she was available as a witness.

The evidence produced on the part of the plaintiff is not of the quality that Judge VANN has said was necessary. In speaking of parol contracts first brought forward and claim made upon, after the death of a party, he, speaking for the court said: " Contracts of the character in question have become so frequent in recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them, and in enforcing them, when established, by specific performance. Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises. They are the natural resort of unscrupulous persons who wish to despoil the estates of decedents. * * * Such contracts should be in writing, and the writing should be produced, or, if ever based upon parol evidence, it should be given or corroborated in all substantial particulars by disinterested witnesses. * * * We wish to be emphatic upon the subject, for we are impressed with the danger, and aim to protect the community from the spoliation of dead men's estates by proof of such contracts through parol evidence given by interested witnesses." (*Hamlin* v. *Stevens*, 177 N. Y. 39, 47, 50; *Rosseau* v. *Rouss*, 180 id. 116, 120; *Taylor* v. *Higgs*, 202 id. 65, 70.) The respondent contends that later decisions of the Court of Appeals have substantially modified these rules. (*McKeon* v. *Van Slyck*, 223 N. Y. 392; *Ward* v. *N. Y. Life Ins. Co.*, 225 id. 314; *Matter of Sherman*, 227 id. 350.) I do not understand that the Court of Appeals intended to alter the principles or policy of the earlier decisions, but only to correct errors in their application by lower courts. The court never said that as a matter of law the witness must be corroborated in all substantial particulars. Nor did it intend to lay down a different rule as to the burden of proof resting on the plaintiff in these and other civil cases. That is what these later cases state. But as to the quality of the proof itself, the rule remains that the lips of one party to the contract are sealed in death, that the other party and his relatives are liable to be swayed by interest, and are relieved from the fear of direct contradiction, and, therefore, they should be corroborated by dis-

interested witnesses, and where, as in the present case, there is such a witness available who is not called, that fact should also be taken into consideration, and the evidence to be accepted should be clear and convincing. These rules are applicable to the consideration of this case. Applying them, in my opinion the plaintiff has failed to establish her case. Fourteen years after the services were rendered the first claim is made by the plaintiff that a contract was made by the decedent to pay the plaintiff $10,000. The agreement was alleged to have been made nine years after the services were rendered. Three and a half years after Mr. Hunt's death the plaintiff writes to one of the executors, stating that Mr. Hunt had intended to make a provision for her in his will, and asking him if he could furnish evidence of an expression of such an intention. A judgment in plaintiff's favor should not be based on such evidence.

Furthermore, in 1899, it is claimed that Mr. Hunt stated that if the plaintiff would take charge of his house she would be amply compensated. If, relying on that promise, she performed the agreement on her part and rendered the service, a right of action for the reasonable value of her work, labor and service accrued in May, 1900, when she left the employment. Her claim was barred by the Statute of Limitations (Code Civ. Proc. § 382) and the oral promise in 1909 would not be sufficient to take the case out of the operation of the statute. Such an acknowledgment or promise must be in writing and signed by the person to be charged. (Code Civ. Proc. § 395.)

The judgment and findings should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and GREENBAUM, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.